UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREGORY GRAF, an individual; MARGUERITE SHAW, an individual; SUELLEN CARMEN, an individual; STEVEN THYBERG, an individual; CAROLYN DESSIN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CHAD CHRISTENSEN, Idaho State Representative for Legislative District 32B and Candidate for Legislative District 35B,<br><br>Defendant. | Case No. 4:22-cv-00212-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Defendant Chad Christensen's Motion to Dismiss. Dkt. 19. Plaintiffs Gregory Graf, Marguerite Shaw, Suellen Carmen, Steven Thyberg, and Carolyn Dessin filed an opposition to the Motion (Dkt. 21), and Defendant replied (Dkt. 22). The matter is ripe for adjudication.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court will GRANT in PART and

DENY in PART the Motion to Dismiss.

## II. BACKGROUND

On May 12, 2022, Plaintiffs Gregory Graf, Marguerite Shaw, Suellen Carmen, Steven Thyberg, and Carolyn Dessin (collectively "Plaintiffs") filed a Complaint against then Idaho State Representative, Defendant Chad Christensen. Dkt 1. Plaintiffs sought declaratory and injunctive relief, alleging Christensen infringed upon their First Amendment rights by blocking them from a Facebook page he used in his official capacity as a State Representative. *Id*. at 8.

Christensen created the Facebook page "Representative Chad Christensen" after his election to the Idaho House of Representatives. Dkt. 17, at 3. Christensen used the page to engage in public discourse, discuss his positions on various issues, and communicate directly with constituents and potential voters. *Id*. at 5. Christensen later retitled the page to "Re-Elect Chad Christensen" and posted regularly on the page in connection with his campaign for re-election. *Id*. at 7. Christensen lost his primary bid for re-election in May 2022. Dkt. 19-1, at 4.

On July 27, 2022, Christensen filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). Dkt. 6. Christensen stated he had unblocked Plaintiffs and would not re-block them through the remainder of his term, ending on November 30, 2022, therefore rendering the case moot. *Id*. at 1.[1] However, in September 2022 Christensen re-blocked Plaintiffs and withdrew his Motion to Dismiss, citing Plaintiffs' harassing behavior. Dkt.

---

[1] Plaintiffs filed an Opposition to the Motion (Dkt. 8) and Defendant replied (Dkt. 9).

10, at 1.

Plaintiffs subsequently amended their complaint on November 28, 2022, and now seek declaratory relief under 28 U.S.C. § 2201 and damages under 42 U.S.C. § 1983. Dkt. 17, at 10. In response, Christensen filed the instant Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that Plaintiffs' claim for declaratory relief is moot, and that Plaintiffs' § 1983 claim is barred by the affirmative defense of qualified immunity. Dkt. 19-1, at 1.

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a court to dismiss a claim if it lacks subject matter jurisdiction to hear the case. Fed. R. Civ. P. 12(b)(1). Because mootness "pertain[s] to a general court's subject matter jurisdiction under Article III," challenges based on mootness are "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000). In a claim seeking declaratory relief, the test for mootness is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

#### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff "fail[s] to state a claim upon which relief can be granted." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (2021). Federal Rule of Civil Procedure 8(a)(2) requires

that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden." *Johnson v. Ricerside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must also allege sufficient facts to "state a claim for relief that is plausible on its face." *Id*. at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id*. at 678. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, "dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### C. Civil Rights under § 1983

28 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws" of the United States. To state a claim under this provision, the plaintiff must adequately plead two elements: (1) that the defendant acted under color of state law and (2) that as a result, plaintiff suffered a deprivation of a Constitutional or statutory right. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158 (9th Cir. 2022) cert. granted, 143 S. Ct. 1779 (2023). However, the doctrine of qualified immunity shields government officials performing discretionary functions from liability from damages so long as their conduct does not violate clearly established constitutional rights. "In deciding whether qualified immunity applies, [the court] asks two questions: (1) did the officer violate a constitutional right, and (2) was that right clearly established at the time of the events at issue?" *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022).

Whether a person acted under color of state law is a factual determination. *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1209 (9th 2002). Whether that action violated a constitutional right is likewise a question of fact. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). Whether the constitutional right was clearly established at the time of the alleged conduct is a question of law. *Id*. at 1085.

### IV. ANALYSIS

As a preliminary matter, the Court notes that Plaintiffs concede their claim for declaratory relief is moot, as Christensen's term as an Idaho Legislator came to an end on November 30, 2022. Dkt. 21, at 4. The Court, therefore, dismisses Count I of Plaintiffs' Amended Complaint for lack of subject matter jurisdiction.

What's left, then, is Plaintiffs' § 1983 claim for damages against Christensen. Dkt.

17, at 9. In this claim, Plaintiffs argue Christensen violated the First Amendment when he blocked them from the Facebook page he allegedly created and used in his official capacity. To survive Christensen's 12(b)(6) motion, Plaintiffs must adequately plead: (1) that Christensen acted under color of state law, and (2) that in doing so, he violated their clearly established constitutional rights.

### A. Under Color of State Law

Although "there is no rigid formula for determining whether a state or local law official is acting under color of state law," the Supreme Court has set fourth four tests to guide courts in identifying state action for purposes of § 1983.[2] *Anderson v. Warner*, 451 F. 3d 1063, 1068 (9th Cir. 2006). "Satisfaction of any one test is sufficient to find state action." *Pasadena Republican Club* v. W. Just. Ctr., 985 F.3d 1161, 1167 (9th Cir. 2021). The Ninth Circuit recently applied the nexus test to assess whether public officials engaged in state action when they blocked constituents from the interactive portions of their publicly accessible social media pages. *Garnier,* 41 F.4th at 1169 Finding that case instructive, the Court similarly applies the nexus test here.

The nexus test is applicable in identifying state action where there is "such a close nexus between the State and the challenged action that the seemingly private behavior may

---

[2] "Those tests include: the public function test, applicable when private individuals are endowed by the State with powers or functions that are both traditionally and exclusively governmental and therefore become agencies or instrumentalities of the State; the joint action test, applicable when the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity; the compulsion test, applicable when the coercive influence or significant encouragement of the state effectively converts a private action into a government action; and the nexus test, applicable when there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Garnier*, 41 F.4th at 1169 (internal quotations and citations omitted).

MEMORANDUM DECISION AND ORDER - 6

be fairly treated as that of the state itself." *Kirtley v. Rainey*, 326 F.3d 1088, 1094–95 (9th Cir. 2003) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)). The focus under this test is "whether the public official's conduct, even if seemingly private, is sufficiently related to the performance of his or her official duties to create a close nexus between the State and the challenged action, or whether the public official is instead pursuing private goals via private actions." *Garnier*, 41 F.4th at 1170 (cleaned up).

For example, the Ninth Circuit previously found a substantial nexus when a District Attorney's office employee illegally accessed a medical database to find her husband's ex-wife by "purport[ing] and pretend[ing] to be a state officer," even though she was off duty at the time she illegally accessed the computer. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). Similarly, a jail commander acted under color of state law when he prevented bystander intervention during an assault he committed off duty by claiming he was "a cop" during the attack. *Anderson*, 451 F.3d at 1069. Conversely, a deputy did not act under color of state law during an attempted robbery when, to conceal his identity, he wore blue jeans, a mask, sunglasses, and a hat instead of a uniform and badge. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996).

Based on this line of precedent, the court in *Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015) set forth a framework to assess the nexus between the State and the challenged action of an off-duty official. A "state employee who is off duty nevertheless acts under color of state law when (1) the employee purports to or pretends to act under color of law, (2) his pretense of acting in the performance of his duties . . . had the purpose and effect of

MEMORANDUM DECISION AND ORDER - 7

influencing the behavior of others, and (3) the harm inflicted on plaintiff related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Id*. at 1037. Applying this framework, the *Naffe* court concluded a prosecutor did not act under color of state law when he posted defamatory comments on his *personal* Twitter page because his page included a disclaimer that all statements were made in his private capacity and not on behalf of his employer, and his page was distinct and separate from the District Attorney's official Twitter page. *Id*.

In *Garnier*, the Ninth Circuit applied the *Naffe* framework to affirmatively answer the question: does a public official violate the First Amendment by creating a publicly accessible social media page related to his or her official duties and then blocking certain members of the public from that page because of the nature of their comments? *Garnier*, 41 F.4th at 1163. In that case, two parents filed a § 1983 claim against two school board trustees after the trustees blocked the parents from the trustees' social media pages. *Id*. at 1166. Before assuming office, the trustees used their social media pages to promote their campaigns. *Id*. at 1164. After assuming office, the trustees continued to use the pages to post content related to school district business and school board activities. *Id*. The parents repeatedly left lengthy comments criticizing the trustees on their social media pages, and the trustees subsequently blocked the parents. *Id*. at 1166.

The Ninth Circuit found that the trustees acted under color of state law when they blocked the parents from their social media pages. *Id*. at 1170. The *Garnier* court cited several key facts in its *Naffe* analysis to reach this conclusion. The trustees "purported and pretended" to act under color of state law by identifying themselves on their social media

MEMORANDUM DECISION AND ORDER - 8

pages as government officials, "list[ing] their official titles in prominent places" on their pages, and including their official school district email addresses in the page contact information. *Id*. at 1171. Additionally, the trustees' social media use "had the purpose and effect of influencing the behavior of others," because they "actively solicited constituent input" about official matters and encouraged constituents to take actions like attending meetings, filling out surveys, and providing feedback via the pages' comments. *Id*. Finally, the Circuit found the trustees' social media use "related in some meaningful way to their governmental status and to the performance of their duties." *Id* (cleaned up). That court so found because the trustees used the pages to "keep the public apprised of goings-on" at the school district and inform citizens about board committees, meeting dates, and the issues discussed therein. The *Garnier* court concluded:

> By representing themselves to be acting in their official capacities on their social media and posting about matters that directly related to their official [school board] duties, the Trustees exercised power possessed by virtue of state law and made possible only because they were clothed with the authority of state law . . . . [W]e hold that the Trustees' maintenance of their social media pages, including the decision to block the [parents] from those pages, constitutes state action under § 1983.

*Id*. at 1173 (cleaned up).

Here, the Court similarly finds Plaintiffs have alleged sufficient facts to plausibly show that Christensen's maintenance of his Facebook page constitutes state action under § 1983. Plaintiffs allege Christensen has identified the page using his official status as state representative, and that the official page was distinct from his personal Facebook page. Dkt. 17, at 9. They claim Christensen used the page to communicate information about official business including legislative goals, issues affecting Idahoans, and his positions on

MEMORANDUM DECISION AND ORDER - 9

such issues. *Id*. They further allege Christensen used the connection between his official status and the page to solicit public engagement and influence voter behavior. Accepting Plaintiffs' allegations as true, the Court finds the pleadings adequate to plausibly show state action under *Garnier* and the *Naffe* framework.[3]

### B. Constitutional Violation

Having determined the Plaintiffs have sufficiently pleaded state action, the Court next determines whether they have sufficiently pleaded a constitutional violation. Here, Plaintiffs allege Christensen violated their First Amendment rights by imposing a viewpoint-based restriction on their ability to participate in a public forum when he blocked them from his Facebook page. Dkt. 17, at 10.

#### 1. Forum Analysis

Under the First Amendment, "the extent to which the Government may limit access to a government forum depends on whether the forum is public or nonpublic." *Garnier*, 41 F.4th at 1177 (cleaned up). To evaluate whether the government has designated a public forum, courts look to two things. First, courts assess "the policy and practice of the government, to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). Second, courts consider "the nature of the property and its compatibility with expressive activity." *Id*.

---

[3] The Court notes that it takes no position on Plaintiffs' likelihood of success on the merits. It merely finds Plaintiffs have met their burden, which is "not an onerous" one, to allege sufficient facts to plausibly show state action at this point in the proceedings. *Johnson* 534 F.3d at 1122.

Plaintiffs allege that Christensen, like the trustees in *Garnier*, made his page publicly available and routinely engaged with the public in the interactive sections of his page. Dkt. 22, at 8. Plaintiffs also allege that Christensen, again like the trustees in *Garnier*, had "no policy or practice for regulating the content posted on the forum." *Id*. In his motion to dismiss, Christensen disputes neither the public nature of the page nor that he lacked a policy for regulating it. Furthermore, "social media websites—Facebook and Twitter in particular—are fora inherently compatible with expressive activity." *Garnier*, 41 F.4th at 1178. "[I]t is cyberspace—the vast democratic forums of the internet in general . . . and social media in particular" that are "the most important spaces" for the exchange of ideas. *Id*. Plaintiffs allege Christensen's actions occurred on Facebook, a publicly accessible social media page inherently compatible with expressive activity. Thus, taking Plaintiffs' allegations as true, they have plausibly alleged that Defendant's page was a public forum.

### 2. Viewpoint Discrimination

In a designated public forum, the government may impose reasonable restrictions on the time, place, or manner of protected speech so long as those restrictions are narrowly tailored to serve a significant government interest and leave open alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791. However, viewpoint discrimination, or "restrictions based on viewpoint are prohibited." *Pleasant Grove City Utah v. Summum*, 555 U.S. 460, 469 (2009). Viewpoint discrimination occurs "when the government targets not subject matter but particular views taken by speakers on a subject." *Rosenberger v. Rectors and Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995). Thus, the government may not regulate speech "when the specific motivating ideology or

the opinion or perspective of the speaker is the rationale for the restriction." *Id*.

Christensen implies that his basis for blocking Plaintiffs from his page is that they were "rude, vexatious, annoying, or simply someone [the] defendant does not want posting on a social media page." Dkt 19-1, at 11. But as Plaintiffs correctly point out, absent a viewpoint-neutral and narrowly tailored government policy, this kind of speech is precisely the kind that the First Amendment seeks to protect. Indeed, the First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," and the speech it protects "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Plaintiffs allege Christensen blocked them from his Facebook page because their comments were critical both of him as a representative and of his positions on policies and other matters of public concern. Selectively silencing only critical viewpoints in a designated public forum is viewpoint discrimination. Thus, taking Plaintiffs' allegations as true, the Court finds they have adequately stated a First Amendment violation based on viewpoint discrimination.

### C. Qualified Immunity

Christensen argues that Plaintiffs' damages claim should be dismissed because it is barred by qualified immunity. "In deciding whether qualified immunity applies, [the court] asks two questions: (1) did the officer violate a constitutional right, and (2) was that right clearly established at the time of the events at issue?" *Seidner*, 39 F.4th at 595 (cleaned up). For purposes of § 1983, a right is clearly established when existing controlling

precedent "has placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Absent controlling authority, a "robust consensus of cases of persuasive authority" may clearly establish a right. *Id*. at 742. Whether a constitutional right was clearly established at the time of the alleged conduct is a question of law. *Tortu*, 556 F.3d at 1085.

The *Garnier* court noted that the issue before it—"whether a state official violates the First Amendment by creating a publicly accessible social media page related to his or her official duties and then blocking certain members of the public from that page because of the nature of their comments"—was a matter of first impression when that case was decided. 41 F.4th at 1163. The Circuit further explained "no Ninth Circuit or Supreme Court authority definitively answered the state action and First Amendment questions at issue,", nor did any adequate consensus of persuasive authority clearly establish the law for purposes of qualified immunity. *Id*. at 1184. Thus, up until *Garnier* was decided, a reasonable official in Christensen's position could not be considered on notice that blocking critical constituents from an official's public social media page could violate the First Amendment. *Id*. Because of this, the Court finds Christensen's actions prior to the issuance of the *Garnier* decision on July 27, 2022, were protected by qualified immunity.

When the Ninth Circuit handed down its decision in *Garnier*, it found that constituents had a First Amendment right to comment on public officials' publicly accessible social media pages related to their official duties without being blocked because of the nature of their comments. *Id*. at 1163. The Court finds that this right was, therefore, clearly established in this circuit as of that decision on July 27, 2022. Plaintiffs allege that

MEMORANDUM DECISION AND ORDER - 13

Christensen, who was still an elected representative at the time, re-blocked them from his page in September 2022, after the *Garnier* decision. Thus, Plaintiffs have adequately pleaded that their First Amendment claims based on Defendant's actions to re-block them are not barred by qualified immunity.

Christensen argues that even after the *Garnier* decision, his alleged actions were not clearly established as unconstitutional because they did not fall squarely within the conduct proscribed by *Garnier*. Christensen claims that *Garnier* held only social media pages "virtually never used" for campaigning "are pages to which state action and First Amendment protections apply." Dkt. 19, at 5. But the Court "need not identify a prior *identical* action to conclude that the right is clearly established." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added). And contrary to Christensen's contentions, the *Garnier* court noted that "*many* of the Trustees' posts" contained "material that could promote the Trustees' personal campaign prospects." *Garnier*, 41 F.4th at 1172 (emphasis added). Nonetheless, the Circuit found the trustees engaged in state action in violation of the First Amendment when they blocked their constituents from their social media pages.

True, the *Garnier* court acknowledged the trustees "virtually never used" their social media pages for "overtly political or self-promotional material." *Id*. But Plaintiffs here allege that like the trustees' actions, Christensen's actions in managing his page went beyond mere self-promotion and crossed the state action threshold. Christensen characterizes his actions differently. *See*, e.g. Dkt. 19, at 5–7. The Court does not, and indeed cannot, weigh the merits of either party's arguments at this point in the proceedings. At the dismissal stage, the Court must accept Plaintiffs' well-pleaded allegations as true.

Under this standard, the Court finds Plaintiffs have stated sufficient facts to plausibly allege Christensen re-blocking them after July 27, 2022, violated the right clearly established in *Garnier*. The Court must, therefore, allow Plaintiffs' § 1983 damages claim to proceed.

## V. CONCLUSION

Because the parties do not dispute that Plaintiffs' claim for declaratory relief is moot, the Court grants Christensen's motion to dismiss for lack of subject matter jurisdiction as to Count I of the First Amended Complaint.

In ruling on the instant 12(b)(6) motion, the Court does not decide the merits of whether Christensen's use of his social media page created a designated public forum, or whether his management of the page violated Plaintiffs' constitutional rights. The Court merely finds, considering all facts in the light most favorable to the Plaintiffs, that Plaintiffs have met their burden to state a plausible § 1983 claim for damages. *Garnier* held that when a government official blocks users from a social media page used to conduct official business—even a page once used for campaign activities—that official acts under color of state law and violates the First Amendment. Plaintiffs have alleged sufficient facts to plausibly state that Christensen's management of his Facebook page falls within the conduct proscribed by *Garnier*. While Christensen disputes these contentions, further inquiry is necessary to resolve these factual disputes, and dismissal of Plaintiffs' § 1983 claim is improper at this point in the proceedings.

## VI. ORDER

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Dismiss (Dkt. 19) as to Count I of the First Amended

Complaint (Dkt. 17, at 8–9) is GRANTED.

2. Defendant's Motion to Dismiss (Dkt. 19) as to Count II of the First Amended Complaint (Dkt. 17, at 9–10) is DENIED.

DATED: November 2, 2023

David C. Nye
Chief U.S. District Court Judge